## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLIED WORLD ASSURANCE COMPANY (U.S.), INC. | ) | |
| | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JURY TRIAL DEMANDED |
| | ) | |
| GREAT DIVIDE INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Allied World Assurance Company (U.S.), Inc. ("Allied World"), for its Complaint against Defendant Great Divide Insurance Company ("Great Divide"), states as follows:

## NATURE OF ACTION

1.      Allied World seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, to determine the parties' respective rights and obligations under liability insurance policies issued to a mutual insured, Precision Trenchless, LLC ("Precision").  Allied World issued a commercial general liability policy to Precision.  Great Divide issued a contractors pollution liability policy to Precision.  Precision faces liability in an underlying lawsuit arising from its installation of a sewer liner and the release of waste and contaminants due to the liner's failure.  Allied World seeks a declaratory judgment that allegations against Precision potentially implicate coverage under the Great Divide policy, and that Allied World and Great Divide owe a co-primary obligation to defend Precision in the underlying lawsuit.

2.      Additionally, Allied World is defending Precision in the underlying lawsuit under reservation of rights.  Great Divide incorrectly denied coverage for Precision, despite allegations that potentially implicate coverage under the Great Divide policy and trigger Great Divide's duty

to defend Precision in the underlying lawsuit.  As a result, Allied World is funding the full cost of Precision's defense.  Accordingly, Allied World seeks contribution from Great Divide for Great Divide's share of Precision's defense costs that Allied World has paid.

## PARTIES

3.     Allied World is a Delaware corporation with its principal place of business in New York.

4.     Great Divide is a North Dakota corporation with its principal place of business in Iowa.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiff Allied World and Defendant Great Divide are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     This Court has personal jurisdiction over Great Divide because it transacts business in the State of Connecticut and within this district.

7.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this dispute occurred within this judicial district.

## THE INSURANCE POLICIES

**A.     The Allied World Policy**

8.     Allied World issued to Precision Industrial Maintenance, Inc. Commercial General Liability Policy No. 0310-6854, effective April 30, 2018 to April 30, 2019 (the "Allied World Policy").  (The Allied World Policy, Exhibit A).

9.     Precision is an insured under the Allied World Policy.

10.    The Allied World Policy potentially provides coverage for damages because of "bodily injury" or "property damage" occurring during the Allied World Policy's policy period and caused by an "occurrence" within the Allied World Policy's "coverage territory":

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result….

                \*        \*        \*

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; ….

                \*        \*        \*

11.    The Allied World Policy excludes coverage for "bodily injury" or "property damage" caused by a "pollutant":

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.**　　**Pollution**

　　**(1)**　"Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

\*　　\*　　\*

12.　　The Allied World Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste[,]" which "includes materials to be recycled, reconditioned or reclaimed."

**B.**　　**The Great Divide Policy**

13.　　Great Divide issued to Precision Industrial Maintenance, Inc. Contractors Pollution Liability Policy No. CPL2026068-10, effective April 29, 2018 to April 29, 2019 (the "Great Divide Policy").  (The Great Divide Policy, Exhibit B).

14.　　Precision is an insured under the Great Divide Policy.

15.　　The Great Divide Policy provides coverage for damages because of **bodily injury** or **property damage** that first occurs during the Great Divide Policy's policy period that is caused by an **occurrence** and a **pollution condition**, so long as the **bodily injury** or **property damage** also arises out of Precision's work:

## I.    INSURING AGREEMENT

1.    We will pay those sums that the **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** in excess of the deductible or self insured retention, if any, resulting from **pollution conditions** to which this insurance applies. We will have the right and duty to defend the **insured** against any **suit** seeking those damages. However, we will have no duty to defend the **insured** against any **suit** seeking damages to which this insurance does not apply. We may, at our discretion, investigate any **pollution conditions** and settle any claim or **suit** that may result. But:

   a.    The amount we will pay for damages is limited as described in Section **IV.** Limits Of Insurance; and

   b.    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section **III.** Supplementary Payments.

2.    This insurance applies to **bodily injury** or **property damage** only if:

   a.    The **bodily injury** or **property damage** is caused by a **pollution condition** that takes place in the **coverage territory** and is caused by an **occurrence**;

   b.    The **bodily injury** or **property damage** first occurs during the **policy period**; and

   c.    The **bodily injury** or **property damage** arises out of **your work**.

*        *        *

16.     The Great Divide Policy defines **pollution conditions** as "the discharge, dispersal, release, seepage, migration, or escape of **pollutants**."

17.     Identical to the Allied World Policy, the Great Divide Policy defines **pollutants** as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, and waste[,]" which "includes materials to be recycled, recondition or reclaimed."

18.     The Great Divide Policy provides primary liability insurance except where Precision has other valid and collectible insurance for damages and supplementary payments that are also covered under the Great Divide Policy:

> **V.     POLICY CONDITIONS**
>
> \*        \*        \*
>
> **7.     Other Insurance**
>
> > If other valid and collectible insurance is available to the **insured** covering damages and supplementary payments also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by this policy shall apply in excess of and shall not contribute with such other insurance.

### THE UNDERLYING LAWSUIT

19.     On January 10, 2019, Precision filed its Complaint against Saertex Multicom LP ("Saertex") and Granite Inliner, LLC in a lawsuit captioned *Precision Trenchless, LLC v. Saertex Multicom LP, et al*, case no. 3:19-cv-0054-JCH, in the United States District Court for the District of Connecticut (the "*Precision* Lawsuit").  (The *Precision* Complaint, Exhibit C).

20.     On April 24, 2019, Ludlow Construction Co., Inc. ("Ludlow") filed its Complaint against Precision in a lawsuit captioned *Ludlow Construction Co., Inc. v. Precision Trenchless,*

*LLC*, case no. 3:19-cv-00606-JCH, in the United States District Court for the District of Connecticut (the "*Ludlow* Lawsuit").  (The *Ludlow* Complaint, Exhibit D).

21.     On December 13, 2019, The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America filed an Intervening Complaint in the *Precision* Lawsuit. (The Intervening Complaint, Exhibit E).

22.     On January 15, 2020, the Metropolitan District Commission ("MDC") filed its Complaint against Ludlow and Precision in a lawsuit captioned *The Metropolitan District Commission v. Ludlow Construction Co., Inc., et al.*, case no. 3:20-cv-00072-JCH, in the United States District Court for the District of Connecticut (the "*MDC* Lawsuit").  On March 20, 2020, MDC filed its First Amended Complaint against Ludlow and Precision.  (The *MDC* First Amended Complaint, Exhibit F).

23.     The *Ludlow* Lawsuit and *MDC* Lawsuit were consolidated into the *Precision* Lawsuit.  Collectively, the consolidated lawsuit will be referred to as the "Underlying Lawsuit."

24.     The operative pleadings allege that on September 27, 2016, MDC contracted Ludlow to serve as the general contractor for the rehabilitation and replacement of water and sewer lines in West Hartford, Connecticut (the "Project").

25.     It is alleged that on May 3, 2017, MDC directed Ludlow to move forward with the Project by replacing sewer and water lines in the Linbrook Road and Montclair Drive neighborhood in West Hartford, Connecticut.

26.     It is alleged that the Project required "the lining of a number of aged MDC sewer mains."

27.     It is alleged that on September 22, 2017, Ludlow subcontracted certain lining work on the Project to Precision.

28.     It is alleged that on May 14, 2018, Precision installed as part of the Project a "Type-S Saertex UV-line with infused resin" (the "Liner"), which Precision purchased from Saertex, to reinforce an existing sewer pipe located beneath Linbrook Road in West Hartford, Connecticut.

29.     It is alleged that on October 3, 2018, a section of the Liner collapsed, creating a blockage in the sewer pipe, and causing sewage and sewage water to intrude into nearby homes and overflow into surrounding property.

30.     It is alleged that sewage and sewage water damaged those homes and surrounding property.

31.     It is alleged that homeowners asserted claims against MDC and Ludlow, demanding that MDC and Ludlow repair the damage to the owners' homes and properties.

32.     MDC and Ludlow allegedly expended certain sums of money to repair and remediate sewage and sewage water damage to the owners' homes and property caused by the collapsed Liner installed by Precision.

33.     MDC's First Amended Complaint seeks to recover from Precision amounts MDC allegedly paid to repair and remediate sewage and sewer water damage.  MDC's First Amended Complaint alleges Precision negligently installed the Liner, resulting in claimed sewage and sewage water damage.

34.     Ludlow's Complaint seeks to recover from Precision amounts Ludlow allegedly paid, or were paid on Ludlow's behalf, to repair and remediate sewage and sewer water damage. Ludlow's Complaint alleges Precision negligently installed the Liner, resulting in claimed sewage and sewage water damage.

35.     Precision tendered its defense of the Underlying Lawsuit to Allied World and Great Divide.

36.     Allied World agreed to defend Precision in the Underlying Lawsuit under the Allied World Policy pursuant to a reservation of Allied World's rights.

37.     Great Divide declined coverage for Precision on various bases that have changed over a period of time.

38.     Despite allegations in the Underlying Lawsuit that potentially implicate coverage under the Great Divide Policy, Great Divide continues to refuse to recognize its coverage obligations and participate in Precision's defense of the Underlying Lawsuit.

39.     Instead of participating in Precision's defense, Great Divide argues that it owes no duty to defend Precision because the Great Divide Policy applies excess of the Allied World Policy.

40.     Contrary to Great Divide's position, the Great Divide Policy applies excess only where available other insurance provides coverage for the same damages also covered by the Great Divide Policy.

41.     The Allied World Policy does not provide the same type of coverage afforded by the Great Divide Policy.

42.     The Allied World Policy does not provide coverage for the same damages as the Great Divide Policy.

43.     Accordingly, the Great Divide Policy does not apply excess of the Allied World Policy.

44.     To date, Allied World has funded the full amount of Precision's defense in the Underlying Lawsuit despite Great Divide's co-primary defense obligation.

## COUNT I – DECLARATORY JUDGMENT

45.     Allied World re-alleges the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

46.     The Federal Declaratory Judgment Act ("DJA") provides that the courts of the United States "may declare the rights and other legal relations of any interested party seeking such declaration" and that any "such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C.A. § 2201(a). The DJA also provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C.A. § 2202.

47.     An actual controversy exists between Allied World and Great Divide concerning Great Divide's duty under the Great Divide Policy to defend Precision in the Underlying Lawsuit. Allied World and Great Divide have genuine and opposing interests that are direct and substantial, and for which a judicial determination will provide a final and conclusive resolution.

48.     Precision is insured under both the Great Divide Policy and the Allied World Policy.

49.     The Allied World Policy and the Great Divide Policy constitute primary liability insurance for Precision for the Underlying Lawsuit.

50.     The Great Divide Policy provides coverage for sums Precision is legally obligated to pay as damages "because of **bodily injury** or **property damage**" that is caused by the "discharge, dispersal, release, seepage, migration, or escape of **pollutants**."  The Great Divide Policy further states that Great Divide has a "duty to defend" Precision "against any **suit** seeking these damages.

51.     The Allied World Policy, however, expressly excludes coverage for "bodily injury" or "property damage" caused by a "pollutant."

52.     The Great Divide Policy and the Allied World Policy do not provide insurance coverage to Precision for the same damages.

53.     Precision faces potential liability in the Underlying Lawsuit for damages that are insured under the Great Divide Policy but excluded from coverage under the Allied World Policy.

54.     Precision also faces potential liability in the Underlying Lawsuit for damages that are insured under the Allied World Policy but excluded from coverage under the Great Divide Policy.

55.     Accordingly, Allied World and Great Divide each owe a duty to defend Precision in the Underlying Lawsuit.

56.     Great Divide is obligated to fund an equal share of Precision's defense in the Underlying Lawsuit.

## COUNT II – EQUITABLE CONTRIBUTION AND/OR UNJUST ENRICHMENT

57.     Allied World re-alleges the allegations set forth in paragraphs 1 through 56 above as if fully set forth herein.

58.     The Great Divide Policy and Allied World Policy constitute primary liability insurance for the Underlying Lawsuit.

59.     The insurance provided by the Great Divide and Allied World Policies cover the same insured, Precision.

60.     The insurance provided by the Great Divide and Allied World Policies do not cover the same damages.

61.     The Great Divide Policy provides coverage for sums Precision is legally obligated to pay as damages "because of **bodily injury** or **property damage**" that is caused by the "discharge, dispersal, release, seepage, migration, or escape of **pollutants**."

62.      The Allied World Policy explicitly excludes coverage for "bodily injury" or "property damage" caused by a "pollutant."

63.     Precision potentially faces liability in the Underlying Lawsuit for damages insured under the Allied World Policy and the Great Divide Policy.

64.     Because the Allied World Policy and the Great Divide Policy do not provide coverage for the same damages, the Great Divide Policy's Other Insurance provision is inapplicable.

65.     Therefore, Great Divide and Allied World share equally in Precision's defense of the Underlying Lawsuit.

66.     Allied World is presently defending Precision in the Underlying Lawsuit.

67.     Despite a plain reading of the allegations against Precision in the Underlying Lawsuit, Great Divide refuses to pay its share of Precision's defense costs.

68.     As a result of Great Divide's incorrect coverage position, Allied World has been forced to incur the full cost of Precision's defense in the Underlying Lawsuit.

69.     Allied World is entitled to contribution from Great Divide for defense costs it has paid in excess of its share.

70.     Great Divide has been unjustly enriched in an amount equal to its share of Precision's defense costs.

WHEREFORE, Allied World respectfully prays that this Honorable Court declare that Great Divide owes a co-primary duty to defend Precision in the Underlying Lawsuit, order Great

Divide to reimburse Allied World for amounts Allied World has paid to defend Precision in excess of its share (plus interest and costs), and award Allied World such other and further relief as may be appropriate.

## JURY DEMAND

Allied World hereby demands a trial by jury on all of its claims.

Dated: March 19, 2021

Respectfully submitted,

ALLIED WORLD ASSURANCE
COMPANY (U.S.), INC.

By:  */s/ Kaitlin A. Kontyko*
　　One of Its Attorneys

　　Kaitlin A. Kontyko
　　ct30744
　　NICOLAIDES FINK THORPE
　　MICHAELIDES SULLIVAN LLP
　　626 Wilshire Blvd., Suite 1000
　　Los Angeles, CA 90017
　　Telephone: (213) 402-1245
　　Facsimile: (213) 402-1246
　　kkontyko@nicolaidesllp.com