UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLIED WORLD ASSURANCE COMPANY (U.S.), INC., <br> *Plaintiff*, | ) <br> ) <br> ) <br> ) | 3:21-CV-386 (SVN) |
| v. | ) <br> ) | |
| GREAT DIVIDE INSURANCE COMPANY, <br> *Defendant*. | ) <br> ) <br> ) | September 30, 2022 |

## RULING AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this insurance coverage dispute, Plaintiff, Allied World Assurance Company (U.S.), Inc. ("Allied World"), and Defendant, Great Divide Insurance Company ("Great Divide"), mutually insure a subcontractor, Precision Trenchless LLC ("Precision"). After Precision's allegedly defective work on a construction project caused property damage, the employer and general contractor brought a lawsuit against it. Precision requested that both Allied World and Great Divide defend it in the suit, and Allied World began defending it. The underlying suit subsequently settled. During the pendency of that suit, Allied World filed the present action, seeking a declaration that Great Divide had a co-primary duty to defend Precision, as well as reimbursement for Great Divide's portion of the defense. Great Divide disputes that it had any duty to defend, citing "other insurance" clauses in both insurers' policies to support its argument that its duty to defend would be triggered only after Precision's defense expended Allied World's coverage.

The parties have now filed cross-motions for summary judgment. Although no material facts are in dispute, the parties disagree over the priority of coverage afforded by their respective insurance policies. Allied World contends that Great Divide's defense obligation was co-primary, rather than excess, because the two policies do not insure the same risk. Great Divide contends

that its coverage was excess to Allied World's coverage without consideration of identity of risk, and, alternatively, that the policies insure the same risk. For the following reasons, the Court agrees with Great Divide's second argument. Accordingly, the Court denies Allied World's motion for summary judgment, ECF No. 46, and grants Great Divide's motion for summary judgment, ECF No. 49.

## I. FACTUAL BACKGROUND

### A. The Construction Project & the Underlying Action

The record reveals the following facts, which are largely undisputed. In 2016, the Metropolitan District Commission (the "MDC") engaged Ludlow Construction Co. ("Ludlow") to serve as the general contractor for a sewer rehabilitation project in West Hartford, Connecticut. Def.'s Local Rule ("L.R.") 56(a)2 Statement ("St."), ECF No. 57, ¶ 1. As part of the project, the MDC directed Ludlow to replace the sewer and water lines on the street at issue. Pl.'s L.R. 56(a)2 St., ECF No. 55, ¶ 22. Ludlow subcontracted with Precision to replace the sanitary sewer lines on the street. Def.'s L.R. 56(a)2 St. ¶ 3. In May of 2018, Precision installed a resin-infused liner to reinforce an existing sanitary sewer pipe located beneath the road. *Id.* ¶ 4.

In October of 2018, a section of the liner collapsed, creating a blockage in the sanitary sewer pipe. *Id.* ¶ 5. The blockage in the pipe released sewage and sewage water into nearby homes and properties, causing damage. *Id.*; Pl.'s L.R. 56(a)2 St. ¶ 25. The MDC and Ludlow paid the property owners to repair the damage. *Id.* ¶ 26.

The underlying action arising from this event, eventually consolidated at *Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19-CV-54 (JCH), was composed of three cases. Pl.'s L.R. 56(a)2 St. ¶ 21. First, the MDC filed claims against both Precision and Ludlow. Ex. F to Compl., ECF No. 1-6. Second, Ludlow filed claims against Precision. Ex. D to Compl., ECF

2

No. 1-4.  Third, Precision filed claims against the manufacturer of the liner.  Ex. C to Compl., ECF No. 1-3.  Following consolidation of these actions, the underlying consolidated action settled with respect to all claims and, accordingly, has been administratively closed.  *See* No. 3:19-cv-54, ECF No. 335.

### B.  Insurance Coverages & the Present Action

Precision had two relevant insurance policies, both of which were in effect on the date that the liner collapsed.  Pl.'s L.R. 56(a)2 St. ¶ 3.  Allied World issued Precision a Commercial General Liability ("CGL") policy, No. 0310-6854, effective from April 30, 2018, to April 30, 2019.  Def.'s L.R. 56(a)2 St. ¶ 14; Ex. A to Compl., ECF No. 1-1.  The policy provides coverage up to $1 million per occurrence and $2 million in the aggregate.  Pl.'s L.R. 56(a)2 St. ¶ 5.  As relevant here, it provides that Allied World "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."[1]  Ex. A to Compl. at 7.  The policy also contains various exclusions, including for property damage arising out of the "discharge, dispersal, seepage, migration, release or escape of 'pollutants[.]'"  *Id.* at 9.  In turn, "pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including . . . waste."  *Id.* at 21.  In sum, Allied World's CGL policy generally covers physical injury to tangible property caused by an accident, but it does not cover physical injury to tangible property caused by the discharge of a contaminant such as waste.

Allied World's CGL policy contains an "other insurance" clause.  The clause provides that, when "other valid and collectible insurance is available to the insured for a loss" covered by the CGL policy, the CGL insurance is "primary," subject to certain enumerated exceptions not relevant

---

[1] The insurance generally applies to any "property damage" that is "caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period.  *Id.*  "Property damage" is defined, in relevant part, as: "Physical injury to tangible property, including all resulting loss of use of that property[.]"  *Id.* at 21.  An "occurrence" is defined, in relevant part, as an "accident."  *Id.*

3

here. *Id.* at 18. If the other insurance is not primary, then Allied World's coverage obligations "are not affected." *Id.* If the other insurance is also primary, then coverage will be shared between Allied World and the other co-primary insurer depending on whether that other insurance permits contribution by equal shares. *Id.*

Great Divide issued Precision a Contractors Pollution Liability ("CPL") policy, No. CPL2026068-10, effective from April 29, 2018, to April 29, 2019. Def.'s L.R. 56(a)2 St. ¶ 19; Ex. B to Compl., ECF No. 1-2. This policy provides coverage up to $1 million per occurrence and in the aggregate. Pl.'s L.R. 56(a)2 St. ¶ 12. The CPL policy covers "property damage" arising from a "pollution condition" caused by "an occurrence" resulting from the insured's work that occurs during the policy period. Ex. B to Compl., ECF No. 1-2 at 8. The terms "property damage" and "occurrence" are defined the same as in Allied World's CGL policy. *Id.* at 17. "Pollution condition" and "pollutant," together, are defined as "the discharge, dispersal, release, seepage, migration, or escape" of "any solid, liquid, gaseous or thermal irritant or contaminant, including . . . waste." *Id.* In sum, Great Divide's CPL policy covers physical injury to tangible property arising from an accidental discharge of a contaminant such as waste.

Great Divide's CPL policy also contains an "other insurance" clause. The clause provides: "If other valid and collectible insurance is available to the insured covering damages and supplementary payments also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by this policy shall apply in excess of and shall not contribute with such other insurance." *Id.* at 15. Although "supplementary payments" is not expressly defined, Great Divide's CPL policy contains a section titled "Supplementary Payments," which outlines Great Divide's obligation to pay defense costs for claims investigated or settled. *Id.* at 12.

4

After the underlying action commenced, Precision requested that both Allied World and Great Divide defend it. Pl.'s L.R. 56(a)2 St. ¶ 30. Allied World agreed to defend Precision subject to a reservation of rights. *Id.* ¶ 31. Great Divide did not defend Precision.[2] Specifically, Great Divide represented that the two policies' "other insurance" clauses render Great Divide's CPL coverage in excess of Allied World's CGL coverage. Def.'s L.R. 56(a)2 St. ¶¶ 28–29.

In March of 2021, Allied World brought the present two-count complaint against Great Divide. Count One seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Great Divide owed a co-primary duty to defend Precision in the underlying action alongside Allied World because Precision's liability was insured by Great Divide's CPL policy. Compl. ¶¶ 53–56. Count Two claims unjust enrichment and equitable contribution on the ground that Allied World unfairly shouldered the totality of Precision's defense costs. *Id.* ¶¶ 65–70. Following discovery, the parties filed cross-motions for summary judgment. ECF Nos. 46, 49. Both motions turn on a single, identical issue: whether Great Divide had a duty to defend Precision in the underlying action in light of the two insurance policies' "other insurance" clauses.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 56(a)

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute must be both genuine

---

[2] Allied World contends that Great Divide denied its duty to defend through two letters to Precision, dated November 9, 2018, and May 30, 2019, respectively. Hesselink-Hicks Decl., ECF No. 51, ¶¶ 10, 13. The beginning of both letters represented that Great Divide would "continue to investigate this matter subject to a full reservation of rights," and advised that any coverage pursuant to the CPL policy would be "excess of any other valid and collectible insurance, including your Commercial General Liability policy." Ex. A-2 to Hicks Decl., ECF No. 51 at 39, 51. The conclusion of the letters characterizes the foregoing analysis as a "coverage determination." *Id.* at 49, 62. Great Divide disputes the significance of these letters, and contends that it never expressly denied coverage. Hesselink-Hicks Decl. ¶¶ 11, 14. This dispute is not material, given the parties' agreement that Great Divide did not defend Precision at any point in the litigation of the underlying action. Def.'s L.R. 56(a)2 St. ¶¶ 28–29.

and material to defeat summary judgment, meaning that it "might affect the outcome of the suit under the governing law" and could allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the movant bears an "initial responsibility of informing the district court of the basis for its motion," a non-movant who bears the ultimate burden of proof must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (internal quotation marks omitted). Thus, summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

A court may properly address the merits of a declaratory judgment action through a motion for summary judgment. *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 444 (D. Conn. 2010). "[I]n an insurance case, it is the function of the court to construe the provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law that is appropriately decided on a motion for summary judgment." *Id.* at 445 (internal punctuation and quotation marks omitted).

### B. Insurance Policy Interpretation Under Connecticut Law

As this Court previously held, Connecticut law, to the extent common with New York law, governs this diversity action. ECF No. 43. Under Connecticut law, "[t]he [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy." *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co. of Ill.*, 247 Conn. 801, 805–06 (1999) (second alteration in original) (citations and internal quotation marks omitted). "The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as

6

disclosed by the provisions of the policy." *Id.* at 805. The contract of insurance "must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy." *Id.* In interpreting the policy, "policy words must be accorded their natural and ordinary meaning." *Id.* at 806. If the terms of the policy are ambiguous, any ambiguity "must be construed in favor of the insured because the insurance company drafted the policy." *Id.*

The question of whether an insurer has a duty to defend its insured "is purely a question of law," which is determined by comparing the allegations of the complaint in the underlying action with the terms of the insurance policy. *Misiti, LLC v. Travelers Prop. Cas. Co. of Am.*, 308 Conn. 146, 154 (2013) (citation and internal quotation marks omitted). "If an allegation of the complaint falls *even possibly* within the coverage, then the insurance company must defend the insured." *Moore v. Cont'l Cas. Co.*, 252 Conn. 405, 409 (2000) (emphasis added) (citation and internal quotation marks omitted). In other words, "the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage." *DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688 (2004) (emphasis in original). The duty to defend extends to the entire underlying action. *See Imperial Cas. & Indem. Co. v. State*, 246 Conn. 313, 332 (1998) ("The fact that the complaint alleges a claim that is excluded by the policy does not excuse [the] insurer from defending [the] insured where other counts of the claim fall within the provisions of the policy.") (quoting 7C J. Appleman, Ins. Law & Prac. § 4684, pp. 78–79 (1979)); *see also Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 814 (recognizing an insurer's duty to defend "against all claims when even one claim falls even *possibly* within the policy's coverage (emphasis in original) (citation and internal quotation marks omitted)).

"[I]f the complaint alleges a liability which the policy does not cover," however, "the insurer is not required to defend." *Springdale Donuts, Inc.*, 247 Conn. at 807 (citations and internal

quotation marks omitted). To that end, Connecticut courts "will not predicate the duty to defend on a reading of the complaint that is . . . conceivable but tortured and unreasonable." *Misiti, LLC*, 308 Conn. at 156 (citation and internal quotation marks omitted).

### III.     DISCUSSION

Whether Great Divide had a duty to defend Precision in the underlying action turns on an interpretation of both insurance policies' "other insurance" clauses. Such clauses generally operate "to reduce or eliminate the insurer's loss in the event of concurrent coverage of the same risk." *Aetna Cas. & Sur. Co. v. CNA Ins. Co.*, 221 Conn. 779, 783 (1992) (quoting *Werley v. U.S. Auto. Ass'n*, 498 P.2d 112, 117 (Alaska 1972)). The Connecticut Supreme Court has held that two insurance policies' "other insurance" clauses are enforceable to determine the priority of coverage so long as at least two requirements are met: first, that the "other insurance" clauses do not conflict; and second, that the clauses do not otherwise operate to deprive the insured of coverage. *Id.* Specifically, in *Aetna Casualty & Surety Co.*, the court reasoned that the "other insurance" clauses contained in two underinsured motorist coverages were "valid for the purpose of establishing the order of coverage between insurers" because their enforcement did not "compromise coverage for the insured." *Id.* The court further reasoned that the plain terms of both "other insurance" clauses did not conflict, but rather could be read together to mean that the plaintiff insurer's coverage was primary and the defendant insurer's coverage was in excess. *Id.* at 787. Therefore, both clauses were enforceable. *Id.*

The two requirements expressly considered by the Connecticut Supreme Court in *Aetna Casualty & Surety Co.* are satisfied here. Allied World's CGL policy provides that it will provide primary coverage notwithstanding the availability of other applicable insurance, except that it will equally share coverage with another policy that, by its terms, is also primary. Great Divide's CPL

8

policy provides that its coverage will be in excess of all other applicable insurance unless that other insurance is specifically in excess. Reading those clauses together, Allied World's CGL policy affords the sole primary coverage in this circumstance because Great Divide's CPL policy, by its terms, applies only after the coverage afforded by Allied World's CGL policy is expended. Thus, there is no conflict between these clauses. Additionally, they do not operate to deprive Precision of full indemnification for the loss; they merely apportion liability between the insurers.[3] *See id.* at 785.

In seeking judgment in its favor, however, Allied World contends that *Aetna Casualty & Surety Co.* imposes a third requirement: the respective policies must insure the "same risk" for the "other insurance" clauses to apply. Allied World further contends that the CGL and CPL policies here do *not* insure the "same risk," given that its CGL policy expressly excludes coverage for property damage due to the discharge of waste while Great Divide's CPL policy expressly covers property damages due to the discharge of waste. Great Divide disputes Allied World's argument that identity of risk is necessary for the CPL policy's "other insurance" clause to apply. In the alternative, Great Divide contends that the CGL and CPL policies *do* insure the "same risk," specifically, defense costs of the underlying action.

For the reasons that follow, the Court concludes that the "other insurance" clauses apply only if the policies insure the same relevant risk, but also concludes that the relevant risk, Precision's defense in the underlying action, is insured by both policies. Therefore, the operation of the "other insurance" clauses renders Great Divide's coverage in excess of Allied World's

---

[3] Great Divide contends that, in fact, imposing a co-primary duty on it to defend Precision *would* produce adverse consequences for the mutually insured. Specifically, Great Divide notes that "defense costs, under [Allied World's] policy, do not reduce policy limits, whereas under [Great Divide's] policy, they *do* reduce policy limits." ECF No. 56 at 4. The Court notes that this circumstance would not quite be analogous to *Aetna Casualty & Surety Co.*, in which the court was concerned about a coverage vacuum by virtue of the policies' "other insurance" clauses. In any event, the Court need not address this issue, given its conclusion below that Great Divide ultimately did not have a co-primary duty to defend Precision.

coverage with respect to the duty to defend, and Great Divide did not owe a co-primary duty to defend Precision in the underlying suit.

A. Policies Must Insure the Same Risk for the "Other Insurance" Clauses to Apply

The Court first addresses Allied World's contention that two insurance policies must insure the same risk for their "other insurance" clauses to apply. Contrary to Allied World's reading of *Aetna Casualty & Surety Co.*, the Connecticut Supreme Court's decision does not expressly answer that precise question. The court had no occasion to specifically consider it because, importantly, the insurers in that case stipulated "that the claimant was covered under both policies." *Aetna Cas. & Sur. Co.*, 221 Conn. at 786. In other words, the court's task was to resolve the conflict between the two "other insurance" clauses to determine the priority of coverage; the court did not need to examine the scope of the coverage afforded to the insured under both policies. That said, when explaining the history and purpose of "other insurance" clauses, the court noted that "other insurance clauses function solely to reduce or eliminate the insurer's loss in the event of *concurrent coverage of the same risk.*" *Id.* at 783 (quoting *Werley*, 498 P.2d at 117) (emphasis added). This dicta lends some support to Allied World's argument. *See also Chestnut Inv., LLC v. Nautilus Ins. Co.*, No. CV116020077S, 2013 WL 1943838, at *13 (Conn. Super. Ct. Apr. 17, 2013) ("in order for an other insurance clause to operate in the insurer's favor, there must be both an identity of the insured interest and an identity of risk" (quoting Couch on Ins. § 219.14)).

Additionally, courts in other jurisdictions have held that an insurance policy's "other insurance" clause applies only if both of the relevant policies insure the same interest and the same risk, consistent with both *Aetna Casualty & Surety Co.* and *Chestnut Investment*. Most notable are two cases from New York state courts. In *Fieldston Property Owners Ass'n v. Hermitage Insurance Co.*, 16 N.Y.3d 257, 260–61 (2011), the mutually insured had two relevant insurance

policies: a standard commercial general liability policy very similar to Allied World's CGL policy, and a Directors & Officers Liability ("D&O") policy covering wrongful acts committed by the insured corporate entity's directors and officers. The underlying action against the insured included claims arising from the conduct of the insured's officers. *Id.* at 261. The D&O insurer refused to contribute to the CGL insurer's defense of the mutually insured, however, citing the D&O policy's "other insurance" clause, which rendered its coverage in excess of the CGL coverage. *Id.* at 262.

The New York Court of Appeals agreed with the D&O insurer. *Id.* at 264. The court first noted that an insurer has a duty to defend an entire underlying action, even if only one of the claims arise from a covered event and other claims do not. *Id.* at 264–65. In addition, both insurers "conceded at least the possibility that both" the CGL and D&O policies covered claims raised in the underlying action. *Id.* Accordingly, pursuant to the terms of the two policies' "other insurance" clauses, the CGL insurer had a duty to defend the entire action, and the D&O insurer's duty to defend was not triggered until the CGL policy's coverage was expended. *Id.* at 265. The court noted that its holding was limited to the insurers' duties to defend, given that the D&O insurer "would appear to have an obligation to indemnify [the insured] for a greater proportion of the causes of action, if successfully prosecuted." *Id.* Crucial to the court's holding was the fact that both insurance policies covered the relevant risk, namely, the insured's defense of the underlying action. *Id.* at 264–65. *See also Allstate Ins. Co. v. Hartford Ins. Co. of Midwest*, No. 17-Cv-7553 (SHS), 2019 WL 3066491, at *3 (S.D.N.Y. July 12, 2019) (citing *Fieldston* and noting that, under New York law, "[w]hen determining which insurance coverage takes precedence in a priority dispute, courts first look to the policies' language to determine if the two policies cover the same

risk. . . . If they do, then the priority or allocation of coverage turns on a comparison of the policies' 'other insurance' clauses." (citations omitted)).

The New York Appellate Division applied similar reasoning to determine the priority of coverage for damage arising from a rock-climbing injury. *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa.*, 65 A.D.3d 12, 26 (N.Y. App. Div. 2009). The rock-climbing gym had a standard commercial general liability policy, and it was listed as an additional insured on the climbing harness manufacturer's commercial general liability policy. *Id.* at 14–15. The harness manufacturer's insurance policy had an "other insurance" clause providing that it would generally afford primary coverage, and the court rejected that insurer's attempt to avoid bearing the sole primary duty to defend the gym. *Id.* at 15–16. After finding that the gym's possible liability in the underlying action was "potentially covered" by both policies, the court gave effect to the "other insurance" clause in the harness manufacturer's insurance policy and held that insurer to have the sole primary duty to defend the gym. *Id.* at 19–20; *see also id.* (quoting 15 Couch on Ins. § 219:14 for the proposition that: "The rule that the risks be identical in order for an 'other insurance' clause to apply does not mean that the total possible coverage under each policy be the same, but merely that with respect to the harm which has been sustained there be coverage under both policies").[4]

---

[4] Several other cases have similarly emphasized that two insurance policies must insure the same risk for their "other insurance" clauses to apply. *Emps.' Mut. Cas. Ins. Co. v. Hughes*, 780 F. Supp. 2d 1204, 1208 (N.D. Ala. 2011) (explaining that, under Alabama law, "[t]o implicate the 'other insurance' clauses in two or more insurance contracts, there must be 'identity of insured interest and identity of risk.' . . . If the two policies insure different things, or insure against different risks, the presence of 'other insurance' clauses in the policies does not trigger the coordination of the coverages"); *Hartford Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 19-cv-06349-RS, 2020 WL 8736182, at *11 (N.D. Cal. Nov. 24, 2020) (noting that, under California law, "[o]ther insurance clauses become relevant only where several insurers insure the same risk at the same level of coverage" (citation and internal quotation marks omitted)); *Moroney Body Works, Inc. v. Cent. Ins. Cos.*, 87 Mass. App. Ct. 774, 776 (2015) (explaining that, under Massachusetts law, "other insurance" clauses "apply where there are two or more concurrent policies that insure the same risk and the same interest, for the benefit of the same person, during the same period" (citation and internal quotation marks omitted)).

Given the weight and reasoning of these authorities, the Court agrees with Allied World that the relevant question is whether the two policies at issue insure the same risk.

### B. The Policies Here Insure the Same Risk

The Court must next consider whether Allied World's CGL policy and Great Divide's CPL policy insure the same risk. As set forth in more detail above, Allied World's CGL policy covers physical injury to tangible property caused by an accident, but it excludes from coverage physical injury to tangible property caused by the discharge of a contaminant such as waste. Great Divide's CPL policy covers physical injury to tangible property arising from an accidental discharge of a contaminant such as waste. As Allied World argues, Great Divide's CPL policy appears to cover the precise injury specifically excluded from Allied World's CGL policy coverage. There is one important overlap in the CGL and CPL policy coverage, however: defense costs of the underlying action.

Both Allied World's CGL policy and Great Divide's CPL policy contain identical language that the insurers have "the right and duty to defend the insured against any 'suit' seeking" damages due to physical injury to tangible property. Ex. A to Compl. at 7; Ex. B to Compl. at 8. It is well established in Connecticut that an insurer's duty to defend is "much broader in scope and application than its duty to indemnify," giving rise to the rule that an insurer must defend the insured if the complaint in the underlying action alleges facts which could possibly constitute a covered injury. *Springdale Donuts, Inc.*, 247 Conn. at 807 (citations and internal quotation marks omitted). In other words, "the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage," whereas the duty to indemnify "depends upon the facts established at trial and the theory under which judgment is actually entered in the case." *DaCruz*, 268 Conn. at 688 (citations and internal quotation marks omitted) (emphasis in original).

13

As several courts have observed, the "insurer's duty to defend works, in essence, as a form of 'litigation insurance' for the insured." *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1148 (2d Cir. 1989); *see also Sport Rock Int'l, Inc.*, 65 A.D.3d at 21.

Here, Allied World agreed to defend Precision in the underlying action and conceded that its CGL policy imposed a duty to defend Precision in the underlying action. Pl.'s L.R. 56(a)1 St., ECF No. 48, ¶ 16 ("Allied World potentially provides coverage for" the damages claimed in the underlying action). Similarly, Great Divide conceded that Precision faced a liability in the underlying action which could potentially fall within the scope of its CPL policy. ECF No. 56 at 1 (agreeing with Allied World's concession that both Allied World and Great Divide have a duty to defend Precision in the underlying action). Thus, both policies insure the risk associated with defending Precision against the underlying action. These duties to defend extended to the entire underlying action. *See Imperial Cas. & Indem. Co.*, 246 Conn. at 332; *Capstone Bldg. Corp.*, 308 Conn. at 814.

It follows from these principles that Allied World's policy and Great Divide's policy insure the *same* risk: the duty to defend Precision in the underlying suit. Indeed, numerous cases establish that defense costs, a loss suffered by the insured due to the underlying action, are a risk that is relevant when determining the applicability of two insurance policies' "other insurance" clauses. *See Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am.*, 881 F. Supp. 2d 570, 577 (S.D.N.Y. 2012) (analogizing *Fieldston* because "the defense costs of the [underlying action] were a 'loss' for which there was other insurance, namely, the [adverse insurer's policy], and, therefore [the other insurer's] excess coverage for any such costs did not apply"); *Fireman's Inc. Co. of Wash., D.C. v. Fed. Ins. Co.*, 233 A.D.2d 193, 193 (N.Y. App. Div. 1996) (determining that two insurance policies' "other insurance" clauses insured the same loss, "including defense costs").

14

For example, in *Fieldston*, the court explained that both policies covered "the 'loss' arising from *the defense of*" the underlying action. *Fieldston*, 16 N.Y.3d at 265 (emphasis added).

In another case, a federal district court applied similar reasoning to determine the priority of coverage between a commercial general liability policy and a specialty risk protector policy, with respect to a mutually insured who faced liability for trademark infringement in an underlying action. *Mich. Millers Mut. Ins. Co. v. Ill. Nat'l Ins. Co.*, No. CV 17-2712-JFW(AFMX), 2017 WL 4676574, at *1 (C.D. Cal. July 24, 2017). The court enforced the CGL policy's "other insurance" clause, which rendered its coverage primary, because both policies covered "the same *relevant* risk—the duty to defend" the insured against the underlying action. *Id.* at *4. The CGL insurer attempted to avoid its policy's "other insurance" clause by arguing that the two policies did not cover the same risk, given that the specialty risk insurance policy expressly covered claims for trademark infringement and the CGL policy may not have covered such claims. *Id.* at *3. The court rejected this argument, however, reasoning that it "misses the point. The relevant risk is the defense of the Underlying Action." *Id.* at *5 (discussing *Fieldston*). Because both policies covered the defense of the underlying action, the policies' "other insurance" clauses were implicated, rendering the CGL policy's coverage primary. *Id.* at *5 (analogizing *Fieldston* because, "even though the [specialty risk insurance policy] covers [the insured] for trademark infringement whereas the [CGL policy] may not, both policies cover (or would have covered) defense costs"). The Court finds the reasoning of *Fieldston*, *Michigan Millers*, and the other cases that follow *Fieldston* compelling.

Allied World contends that the relevant risk is limited to the injury—in this case, the property damage caused by the blockage and discharge of sewage and water from the sewage pipe. With respect to that injury, Allied World contends that Great Divide's CPL policy insures

15

Precision against the precise risk excluded by Allied World's CGL policy, namely, the property damage caused by the discharge of sewage and sewage water alleged in the underlying action. The Court, however, is not persuaded by Allied World's representation that Great Divide's CPL policy covers *precisely* that which is excluded from Allied World's CGL policy. Indeed, one case from the Wisconsin Supreme Court persuasively rejected a similar argument. *Acuity v. Chartis Specialty Ins. Co.*, 361 Wis. 2d 396, 419 (2015). In that case, the court considered whether natural gas constituted a "contaminant" as that term was defined by both the contractors' pollution liability policy and the commercial general liability policy's exclusion. *Id.* The pollution liability insurer argued that the two policies were "essentially the flip side of each other," similar to Allied World's argument here. *Id.* at 428. The court noted, however, that one insurance policy's affirmative grant of coverage is not necessarily the "mirror image" of another insurance policy's exclusion, given that courts generally interpret affirmative coverages broadly and exclusionary clauses narrowly. *Id. See also Nash St., LLC v. Main St. Am. Assur. Co.*, 337 Conn. 1, 19 (2020) (citing Connecticut precedent "favoring a narrow interpretation of insurance policy exclusions"). As the court explained, "it is entirely possible for both a commercial general liability policy with a pollution exclusion clause and a contractors' pollution liability policy to cover the insured's liability." *Acuity*, 361 Wis. 2d at 428. Allied World has not offered a persuasive reason for this Court to disagree with the Wisconsin Supreme Court. Here, however, the Court need not determine the precise scope of the CGL policy's pollution exclusion or the CPL policy's affirmative grant of coverage. Although such scope would be relevant to the two insurers' duties to *indemnify* Precision, the present motions, and indeed the present action, concern only the insurers' duties to *defend* Precision in the underlying action.

Because the underlying action alleged facts that could potentially fall within both Allied World's CGL policy and Great Divide's CPL policy, and because the insurers' broad duties to defend were thus triggered, those policies insure the same relevant risk—Precision's defense in the underlying action. As in *Fieldston* and *Michigan Millers*, that overlap in coverage is sufficient to trigger the policies' "other insurance" clauses. As explained, those "other insurance" clauses do not conflict; rather, they clearly explain that Great Divide's coverage is only in excess of Allied World's coverage. The Court's enforcement of the plain meaning of both insurance policies' language is consistent with the intent of the parties, as expressed in the provisions of the policies themselves. *See Springdale Donuts, Inc.*, 247 Conn. at 805 ("The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy" (citation and internal quotation marks omitted)).

In sum, although the Court agrees with Allied World that the "other insurance" clauses are triggered only if the policies insure the same risk, the Court also agrees with Great Divide that the CGL and CPL policies here *do* insure the same risk—specifically, defense costs of the underlying action. Thus, the operation of the "other insurance" clauses, rendering Great Divide's coverage in excess of Allied World's coverage with respect to the duty to defend, defeats Allied World's claims for a declaration that Great Divide's coverage is co-primary, as well as Allied World's associated tort claims.[5] Accordingly, the Court must deny Allied World's motion for summary judgment and grant Great Divide's motion for summary judgment.

---

[5] The Court's conclusion does not foreclose the possibility that Great Divide may ultimately bear the greater duty to *indemnify* Precision for any losses that fall within both the CPL policy's affirmative grant of coverage and the CGL policy's pollution exclusion. *Fieldston*, 16 N.Y.3d at 265 (holding that the CGL insurer had the sole primary duty to defend the mutually insured, "notwithstanding the fact that [the D&O insurer] would appear to have an obligation to indemnify [the insured] for a greater portion of the causes of action, if successfully prosecuted"). Because the present action concerns only the insurers' duties to defend, however, the Court will not determine the priority of coverage with respect to the insurers' duties to indemnify Precision.

17

## IV.     CONCLUSION

For the reasons set forth, Great Divide's Motion for Summary Judgment, ECF No. 49, is GRANTED, and Allied World's Motion for Summary Judgment, ECF No. 46, is DENIED.  The Clerk of Court is directed to enter judgment for Great Divide and close this case.

**SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2022.

                                             */s/ Sarala V. Nagala*
                                             SARALA V. NAGALA
                                             UNITED STATES DISTRICT JUDGE